UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEO JUMPING EAGLE,<br><br>Defendant. | 5:23-cr-50102-KES<br><br>ORDER REJECTING REPORT &<br>RECOMMENDATION AND<br>DENYING DEFENDANT'S<br>MOTION TO SUPPRESS |

Defendant, Leo Jumping Eagle, is charged with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Docket 1. Jumping Eagle moves to suppress all evidence stemming from his encounter with Rapid City police on March 25, 2023, on the grounds that the officers involved did not have reasonable suspicion to effectuate a *Terry* stop. Docket 23; Docket 24 at 3. Plaintiff, the United States of America, opposes the motion. Docket 25.

The court referred Jumping Eagle's motion to a magistrate judge under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing on November 15, 2023, the Magistrate Judge filed an Amended Report and Recommendation granting Jumping Eagle's motion to suppress. Docket 32 at 1.[1] The government filed objections to the Amended Report and Recommendation. Docket 35. After

---

[1] The Magistrate Judge initially filed a Report and Recommendation, but then filed an Amended Report and Recommendation a day later. Dockets 31–32.

a de novo review of the Amended Report and Recommendation and the entire record, the court rejects the Amended Report and Recommendation and denies Jumping Eagle's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

After a de novo review of the testimony from the evidentiary hearing, the parties' documents, and the exhibits received into evidence, the court makes the following factual findings:

On March 25, 2023, at approximately 2:35 p.m., Rapid City Police Officer Gavin Kunzler was patrolling the north side of Rapid City near the Surfwood Apartments. Docket 36 at 6–7. Officer Kunzler testified that the area he was

2

patrolling is a high crime area, *Id.* at 7, but that he was not investigating any active crimes at that time. *Id.* at 15–16. Officer Kunzler observed two young men attempting to enter the apartment complex at 120 Surfwood Drive. *Id.* at 7. When the two young men saw Officer Kunzler's patrol vehicle, they changed the course of their travel and walked around the east side of the building toward the north side, or the back, of the building. *Id.* Officer Kunzler then maneuvered his car to the west side of the building and parked in front of 100 Surfwood Drive. *Id.* at 8; Ex. 1[2] at 14:35:25. Once parked, Officer Kunzler stepped out of the vehicle. *Id.* at 14:35:50. He could see Jumping Eagle walking in front of the apartment at 100 Surfwood Drive. *See id.* at 14:35:53. Jumping Eagle was wearing a blue hooded jacket and carrying a backpack. *Id.* at 14:36:00.

Officer Kunzler greeted Jumping Eagle by saying, "What's going on man? Mind if I talk to you for a second?" *Id.* Officer Kunzler's tone of voice was conversational and friendly. *See id.* Jumping Eagle responded, "Ok, sure." Ex. 1 at 14:36:04. Officer Kunzler then introduced himself as an officer with the Rapid City Police Department and asked if he could shake Jumping Eagle's hand. *Id.* at 14:36:05. Officer Kunzler testified that he was wearing his uniform and that his duty weapon was on his person.

After the two men shook hands, Officer Kunzler asked Jumping Eagle, "What are you doing up here, bud?" Ex. 1 at 14:36:10. Jumping Eagle responded, "I don't know, I was just trying to get back inside." *Id.* Officer

---

[2] Ex. 1 is the video recording from Officer Kunzler's body cam footage.

Kunzler asked, "Do you not have a way?" *Id.* at 14:36:15. Jumping Eagle then asked, "I'm trying to go in right now, please." Officer Kunzler replied, "Ok, well hold up just two seconds, Ok, for me." *Id.* at 14:36:18. *Id.* Jumping Eagle quietly said, "Alright," and remained outside. *Id.*

Officer Kunzler then asked, "Who are you visiting here?" *Id.* at 14:36:21. Jumping Eagle replied that he was visiting his cousin. Officer Kunzler asked, "Who is the young kiddo that you were walking with earlier?" *Id.* at 14:36:25. Jumping Eagle responded that it was his cousin, who had "ran away." *Id.* at 14:36:28. Officer Kunzler asked Jumping Eagle why his cousin ran away, and Jumping Eagle said that he didn't know, and that he had told his cousin not to run. *Id.* at 14:36:30. Officer Kunzler said, "Yeah, that'll make you look suspicious, right?" to which Jumping Eagle replied, "Yeah." *Id.* at 14:36:33. Officer Kunzler testified that he did not observe the second person who he saw Jumping Eagle walking with run away and was only aware that this other individual had departed because Jumping Eagle was alone by the time Officer Kunzler intercepted him.

Officer Kunzler told Jumping Eagle to "Go ahead and tell me what your first name is, bud." Ex. 1 at 14:36:35. Jumping Eagle told him that it was Leo. *Id.* at 14:36:39. As Officer Kunzler was getting Jumping Eagle's name, Officer Zackary Raasch arrived on the scene. *Id.* at 14:36:36. Officer Kunzler complimented Jumping Eagle's jersey and asked him if he was a Golden State fan. Jumping Eagle replied that he was. *Id.* at 14:36:40. Officer Kunzler made small talk with Jumping Eagle about the Golden State Warriors. 14:36:43.

4

Officer Kunzler asked Jumping Eagle for his last name, and Jumping Eagle told him that it was Jumping Eagle. *Id.* at 14:36:58.

At this point, Officer Raasch greeted Jumping Eagle and asked how he was doing. *Id.* at 14:37:03. Jumping Eagle said, "Doing good, man, just trying to go back inside." *Id.* at 14:37:05. Officer Kunzler asked what Jumping Eagle's birthday was, then called in Jumping Eagle's name and date of birth to dispatch. *Id.* at 14:37:07. Jumping Eagle meanwhile engaged in small talk with the officers about the weather, *see id.* at 14:37:15, and when asked, explained that he had been on his way to the Maplewood Townhomes but had briefly stopped by Surfwood Drive, *see id.* at 14:37:37.

Jumping Eagle asked, "You guys good?" *Id.* at 14:37:56. Officer Kunzler replied, "I don't know, I'm waiting for dispatch right now because I am not hearing anything back from them right now, currently." *Id.* at 14:37:58. He then asked Jumping Eagle, "Is there anything in the backpack we got to be concerned about, bud?" *Id.* at 14:38:07. Jumping Eagle replied, "No sir," and explained that the backpack contained only his clothes. *Id.* at 14:38:08. Jumping Eagle and the officers then made small talk about Jumping Eagle's sneakers and attire. *Id.* at 14:38:18.

Jumping Eagle asked Officer Kunzler a mostly unintelligible question that may have been "What you need from me, sir?" *Id.* at 14:39:15. Officer Raasch interjected and asked Jumping Eagle if he was on parole. *Id.* at 14:39:16. Jumping Eagle replied that he was on probation. *Id.* at 14:39:19. Officer Raasch asked him when he last spoke with his probation officer. *Id.* at

5

14:39:23. Jumping Eagle said that he had spoken with his probation officer the prior week and admitted that he should probably contact him again. *Id.* at 14:39:25. Officer Kunzler said that the officers were going to contact his probation officer as well. *Id.* at 14:39:40.

Officer Kunzler then asked Jumping Eagle, "And you don't mind if we check your backpack, is that something ok, to just make sure that there is nothing illegal, because you know why we're up here, right dude?" Jumping Eagle replied, "Yeah, I know what's going on around here." *Id.* Officer Kunzler again asked, "Do you mind if we check to make sure that there is nothing illegal inside the backpack," and Jumping Eagle handed it to him. *Id.* at 14:39:53. Officer Kunzer directed Jumping Eagle to stand next to officer Raasch while he searched the bag by saying, "Just hang out with this other officer," and pointing at Officer Raasch. *Id.* at 14:40:02.

Almost immediately after opening the bag, Officer Kunzler found a round of ammunition. *Id.* at 14:40:04. Officer Kunzler then walked back toward Jumping Eagle and attempted to handcuff him. *Id.* at 14:40:17. Jumping Eagle tried to run away. *Id.* at 14:40:24. Officers Kunzler and Raasch subdued Jumping Eagle. *Id.* at 14:40:27. Once Jumping Eagle was handcuffed on the ground, he told the officers that he had a gun in his pocket, which they quickly located. *Id.* at 14:41:23. At that point Officer Kunzler moved Jumping Eagle to his patrol vehicle. *Id.* at 14:41:55. Jumping Eagle was later charged with possession of a firearm by a prohibited person. Docket 1.

6

## DISCUSSION

The Magistrate Judge found that Jumping Eagle's interaction with Officer Kunzler was initially consensual, but became a seizure when Jumping Eagle "motioned to a nearby building [and] said he was 'trying to get in right now please[,]' " and Officer Kunzler responded by requesting that Jumping Eagle remain outside. Docket 32 at 8. Additionally, the Magistrate Judge found that Jumping Eagle's question, "You guys good," and Officer Kunzler's response of "I don't know," was additional evidence that Jumping Eagle's interaction with Officer Kunzler became non-consensual. *Id.* She also found that Officer Kunzler's observations of Jumping Eagle and his companion did not "give rise to reasonable suspicion or probable cause." *Id.* at 9. Next, the Magistrate Judge considered whether any exception to the exclusionary rule applied, and, finding that none did, recommended that the motion to suppress be granted. Docket 32 at 10–15. The government makes two legal objections to the Magistrate Judge's Amended Report and Recommendation, namely, to her findings that (1) Officer Kunzler's contact with Jumping Eagle lost its consensual nature, and (2) that Officer Kunzler lacked reasonable suspicion to detain Jumping Eagle. Docket 35 at 7, 10.

## I.   Whether Officer Kunzler's contact with Jumping Eagle lost its consensual nature

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,*

534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). "With some exceptions, both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree,' is inadmissible under the exclusionary rule." *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021) (internal quotation marks omitted) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). But "not all encounters between law enforcement and citizens implicate the Fourth Amendment." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012). "For an officer's behavior to rise to the level of a Fourth Amendment seizure, the officer must use 'physical force or [a] show of authority' to restrain a citizen's liberty." *United States v. Cook*, 842 F.3d 597, 600 (8th Cir. 2016) (quoting Terry, 392 U.S. at 19 n. 16). "A seizure occurs 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Lillich*, 6 F.4th at 875 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)).

"The test [for whether a police-citizen encounter is consensual] is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than focus on particular details of that conduct in isolation." *Id.* at 876 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). While the test remains flexible, the Eighth Circuit has identified "seven nonexclusive factors" that are implicated in the determination. *United States. v. Villa Gonzalez*, 623 F.3d 526, 532 (8th Cir. 2010). The factors are:

> [O]fficers positioning themselves in a way to limit the person's
> freedom of movement, the presence of several officers, the display
> of weapons by officers, physical touching, the use of language or
> intonation indicating compliance is necessary, the officer's
> retention of the person's property, or an officer's indication the
> person is the focus of a particular investigation.

*United States v. Lozano*, 916 F.3d 726, 729 (8th Cir. 2019) (quoting *United States v. Garcia*, 888 F.3d 1004, 1009 (8th Cir. 2018)). The test for whether a reasonable person would feel free to leave is an objective one, meaning that "Fourth Amendment protections do 'not vary with the state of mind of the particular individual being approached[.]' " *Lozano*, 916 F.3d at 730 (quoting *Grant*, 696 F.3d at 784–85)).

When Officer Kunzler first approached Jumping Eagle and asked if he "minded" if he spoke with him, the interaction between the two men was unquestionably consensual. *See id.* at 14:36:00. Officer Kunzler had not positioned himself in any way to limit Jumping Eagle's freedom of movement about the lawn of the apartment complex. There was only one officer present. Officer Kunzler did not touch Jumping Eagle. The lights and sirens on Officer Kunzler's patrol vehicle were not activated. *See Lillich*, 6 F.4th at 877. Although Officer Kunzler was armed, he did not brandish or gesture to his weapon in any way, and thus the mere presence of his service weapon did not change the consensual nature of the interaction at that point. *See Villa Gonzalez*, 623 F.3d at 532 ("The presence of a holstered firearm [] is unlikely to contribute to the coerciveness of [an] encounter absent active brandishing of the weapon.") (quoting *United States v. Drayton*, 536 U.S. 194, 205 (2002)).

A closer question is whether a seizure occurred once Jumping Eagle said he wanted to go outside, and Officer Kunzler replied, "Ok, well hold up just two seconds, Ok, for me." *Id.* at 14:36:18. Although the language used by Officer Kunzler could be interpreted as requiring compliance, Officer Kunzler's intonation indicated that the statement was not a command, but a request. *See id.*; *United States v. Warren*, 984 F.3d 1301, 1303–04 (8th Cir. 2021) (holding that police officer did not seize a car's passenger when the Officer politely said, "Sir, can you just stay in there for me, please," despite officer's testimony that if the passenger had walked away, he would have told him to remain in the car). That Jumping Eagle indicated that he wanted to leave the interaction but ultimately decided to stay in response to Officer Kunzler's request is also not determinative. *See Grant*, 696 F.3d at 782–83 (holding that no seizure occurred where the defendant stated that he "just want[ed] to leave[,]" and the officer requested that he remain so that the officer could run a detection dog on his vehicle, and the defendant then acquiesced to the officer's request).

Moreover, all of the other factors in *Lozano* indicate that a seizure had not occurred: Jumping Eagle's freedom of movement was not impeded by Officer Kunzler, only one officer was present, Officer Kunzler's weapon was holstered, there was no physical touching of Jumping Eagle's person or retention of his property, and there existed no indication that he was the focus of a particular investigation. *See* Ex. 1 at 14:36:17; *Lozano*, 916 F.3d at 729 (quotation omitted). While Officer Kunzler's request that Jumping Eagle "hold up" could be interpreted as requiring compliance, it is not so clearly an order

as to overcome the other factors and establish that Jumping Eagle was seized at that point. Thus, the court finds that no seizure occurred when Officer Kunzler asked Jumping Eagle to "hold up."

Next, the court considers whether a seizure occurred at some later point during the interaction between Jumping Eagle and Officers Kunzler and Raasch. Following Officer Kunzler's request that Jumping Eagle "hold up," he continued questioning Jumping Eagle. *See* Ex. 1 at 14:36:21. The test to determine whether questioning constitutes a seizure is whether "the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.' " *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting *United States* v. *Hathcock*, 103 F.3d 715, 718 (8th Cir. 1997)). That inquiry relies on the same seven factors previously identified. *See id.* Here, Officer Kunzler's tone was not intimidating, threatening, or coercive, but remained conversational and friendly. *See* Ex. 1 at 14:36:21. After getting Jumping Eagle's first name, Officer Kunzler made light conversation with Jumping Eagle. *Id.* at 14:36:40. The nature of Officer Kunzler's questioning alone up is not sufficient to establish that a seizure occurred.

The court also considers whether the presence of Officer Raasch on the scene at some point converted what had heretofore been a consensual encounter into a seizure. "[T]he presence of several officers" is one of the factors to be weighed in the inquiry. *Lozano*, 916 F.3d at 729. But where the officers are "little more than passive observers[,]" their presence is not likely to convert

a would-be consensual interaction into a seizure. *United States v. White*, 81 F.3d 775, 780 (8th Cir. 1996). Officer Raasch was essentially a passive observer on the scene, doing little more than making small talk about Jumping Eagle's clothing until he asked whether Jumping Eagle was on parole. *See* Ex. 1 at 14:36:37, 14:39:16. Officer Raasch also did not stand close to Jumping Eagle or position himself in such a way as to block Jumping Eagle from walking away in the open yard. *See id.*

The fact that Jumping Eagle indicated that he would prefer to go inside also does not convert the consensual encounter into a seizure. Jumping Eagle casually replied to Officer Raasch's greeting by saying, "Doing good, man, just trying to go back inside." *See id.* at 14:37:05. At this point, neither officer told Jumping Eagle he was not free to leave. *See id.* at 14:37:06.  While the officers did not proactively inform Jumping Eagle that he was free to go, this does not necessarily create a seizure. *See White*, 81 F.3d at 778 (noting that no seizure occurred where officer did not explicitly tell defendant that he was free to go). Jumping Eagle later asked Officer Kunzler, "You guys good?" Ex. 1 at 14:37:56. Officer Kunzler again did not definitively prohibit Jumping Eagle from terminating the interaction when he replied in ambiguous terms that he was waiting on dispatch. *See id.* at 14:37:58.

Officer Kunzler directed Jumping Eagle to stand by Officer Raasch while he searched his bag, but this also did not convert the otherwise consensual encounter into a seizure. *See id.* at 14:40:02. Officer Kunzler did not indicate that compliance was necessary through a show of authority. Officer Kunzler's

12

tone was cordial when he asked Jumping Eagle to "just hang out with this
other officer." *See id.* at 14:40:02. Officer Raasch did not use force or position
himself in any way to impede Jumping Eagle's movement. When Officer
Kunzler asked to search bag, he said "Do you mind," which indicated that
Jumping Eagle had a choice. *See id.* at 14:39:44.

Officer Kunzler also made clear that the retention of Eagle Elk's bag was
to be brief. This brief retention was only lengthened because Officer Kunzler
found the round of ammunition. *See id.* at 14:39:59, 14:40:07. In *United States
v. Jefferson*, an officer requested the defendant's driver's license before asking
him to come and be seated in his patrol vehicle. 906 F.2d 346, 349–50 (8th Cir.
1990).  The court in that case found that a seizure had occurred. *Id.* Unlike the
officer in *Jefferson*, Officer Kunzler made clear when he asked for Jumping
Eagle's bag that the retention of Jumping Eagle's property was only to last for
the duration of a short, voluntary, search. Thus, the court does not find Officer
Kunzler's retention of Jumping Eagle's property during the search of the bag
sufficient to establish that a seizure occurred.

Although Officer Kunzler did ask Jumping Eagle to keep speaking with
him, he did not demonstrate that compliance was necessary by a show of
authority, by restraining Jumping Eagle's movement, by displaying his service
weapon, by using language or intonation that indicated compliance was
necessary, or by telling Jumping Eagle that he was the focus of a particular
criminal investigation. Thus, the court finds that Officer Kunzler's interaction

with Jumping Eagle did not lose its consensual nature and that no seizure occurred.

## CONCLUSION

Because there is no constitutional violation, the court does not suppress any evidence gathered as a result of the stop. The court rejects the Magistrate Judge's recommendation and denies Jumping Eagle's motion to suppress. Thus, it is

ORDERED that the Amended Report and Recommendation (Docket 32) granting Jumping Eagle's motion to suppress is rejected. The motion to suppress (Docket 23) is denied.

Dated January 4, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

14